UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FRANCES OSMON,                                                                                    Plaintiff

v.                                                                                Case No. 3:15-cv-561-CHL

COMMISSIONER OF SOCIAL SECURITY,                                         Defendant

Memorandum Opinion

I.   Introduction

Frances Osmon filed this lawsuit following the Commissioner's decision to deny her application for disability insurance and supplemental security income benefits. Compl. (DN 1).

Osmon moves for summary judgment. Mot. Summ. J., DN 16.[1]

For the reasons below, the Court will deny Osmon's motion for summary judgment.

II.   Summary judgment standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 – 48 (1986).

III.   Undisputed facts

---

[1] The parties consented to magistrate judge jurisdiction over all proceedings in this case, including entry of judgment. DN 13.

On January 16, 2013, Osmon applied for disability insurance and supplemental security income benefits. Adm. Rec. 126 – 27.[2]  Osmon claimed in her application that her paralyzed vocal cord, neuropathy in the legs, difficulty raising arms, and other ailments disabled her since July 2011. *Id.* at 235 – 57; Def.'s Mem. 1 (DN 22); *but see*, Pl.'s Mem. 1 (DN 17-1) (asserting that Osmon's application alleged disability "since January 16, 2013."). The Commissioner denied Osmon's claims on March 25, 2013 and upon reconsideration on July 3, 2013. Adm. Rec. 37.

On September 10, 2014, the Administrative Law Judge ("ALJ") held a hearing at Osmon's request. *Id.* at 60. Osmon testified about her history of breast cancer, vocal cord paralysis, chronic obstructive pulmonary disease, and other health issues. *See, e.g.*, *id.* at 64.

On November 21, 2014, the ALJ denied Osmon's claim. *Id.* at 34. The ALJ found that Osmon met the insured status requirements of the Social Security Act through December 31, 2011, and she had not engaged in substantial gainful activity since July 1, 2011. *Id.* at 39. The ALJ further found:

> The claimant has the following severe impairments: breast cancer with lumpectomy and chemotherapy with complications, vocal cord paralysis, chronic obstructive pulmonary disease (COPD), bilateral shoulder bursitis/arthritis, peripheral neuropathy, degenerative disc disease of the cervical and lumbar spines, depression, and anxiety.

*Id.* at 39 (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). Ultimately, the ALJ determined that Osmon had not met the Social Security Act's definition of disability. *Id.* at 51.

IV.   Standard of review

The Court should affirm the Commissioner's conclusion unless the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial record evidence.

---

[2] The administrative record includes DNs 12-1 through 12-11. For ease of reading, the Court cites to the page number of the administrative record without reference to the document number.

*Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009)).

The Commissioner evaluates whether a claimant is disabled through a sequential five-step process. 20 C.F.R. § 404.1520(a)(1). Only steps four and five are at issue in this case.

At step four, the ALJ considers the claimant's residual functional capacity and past relevant work. *Id.* § 404.1520(f). Residual functional capacity is an assessment of the claimant's "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted). The claimant has the burden of proof during the first four steps. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At step five, the ALJ assesses the claimant's residual functional capacity along with age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). A claimant who cannot make an adjustment to other work is disabled. 20 C.F.R. § 404.1520(g)(1). At step five, the burden shifts to the Commissioner. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

    V.    <u>Discussion</u>

    A. Whether substantial evidence supports the ALJ's conclusion regarding the plaintiff's <u>speaking limitation</u>

Osmon argues that the ALJ's residual functional capacity determination was "impermissibly vague" because it failed to detail the limitation on her speaking ability. Pl.'s Mem. 3.[3] The ALJ determined that Osmon had the following speaking limitation on her residual

---

[3] Under the heading, "Summary of Issues," Osmon says, "The ALJ's [residual functional capacity], which failed to define the duration of Plaintiff's need to stand or clearly define the limitations on her ability to speak, is impermissibly vague as a matter of Agency Policy." Pl.'s Mem. 3 (brackets added). Osmon made no argument regarding the ALJ's determination of the

3

functional capacity: she "can only speak for fifteen minutes at a time." Admin. Rec. 41. Osmon takes issue because the ALJ's residual functional capacity "does not indicate whether plaintiff can speak for 15 minutes, take a one minute rest and then speak again for 15 minutes (which would [mean] essentially no limitation in an 8 hour [workday]), or whether he meant that she needed much longer breaks." Pl.'s Mem. 4 – 5 (brackets added).

Substantial evidence supports the ALJ's conclusion on Osmon's speaking limitation. First, a limitation that an individual "can only speak for fifteen minutes at a time," is not impermissibly vague. The limitation implies that the individual should take a break after speaking for fifteen minutes. While the fifteen-minute limitation could have spelled out the length of breaks in between speaking stints, the absence of such language does not make the entire fifteen-minute limitation impermissibly vague.

Second, the ALJ discussed Osmon's vocal cord paralysis in detail. Admin. Rec. 44. In particular, the ALJ cited a 2012 treatment note indicating that the paralysis had improved. *Id.* at 45. Osmon did testify as to her difficult speaking in a crowded room, *id.* at 78, but she points to no medical record which would suggest that she had a speaking limitation during the relevant period. On the other hand, the ALJ found, "the claimant's complaints with regards to her history of vocal cord paralysis are not fully supported by medical evidence of record, especially with regards to the frequency and severity of her symptoms." *Id.* at 45.

Third, Osmon points to no part of the administrative record that would provide further clarity as to her speaking limitation. Osmon's own testimony provides little clarity on this point.

> Q: So in a crowded room with lots of people talking, it's going to be much more difficult?

---

limitations on Osmon's ability to stand, and the Court has no duty to address an undeveloped argument.

> A: After awhile, I'll start and like where it sounds like I'm talking through my breath.
> Q: Okay, so you're –
> A: Yeah.
> Q: You can speak relatively so that people can hear you pretty well for about how long before that happens, would you say?
> A: It depends. I might walk from one room to another.
> Q: Well, assume you're sitting like you are now. You're not having to exert yourself, like walk or move around. You're sitting down, and if you're just sitting down, can you speak for, say a half an hour before you start getting really kind of out of breath with the speaking?
> A: It depends.
> Q: It's kind of close?
> A: Yeah, it really just depends.
> Q: Okay, so you're not long on the phone anymore?
> A: There's no way. There's no way.
> Q: Can you talk for about 15 minutes at a time without too much trouble?
> A: Well, here's another problem I have. It's almost like 15 medications I'm on at home. And each one of those is either drowsiness or something. So just, you know, I have a hard time concentrating sometimes.

*Id.* at 77 – 79.

Altogether, the ALJ's determination that Olson had a fifteen-minute speaking limitation was not impermissibly vague. Rather, substantial evidence supported the fifteen-minute speaking limitation on Osmon's residual functional capacity.

    B.  <u>Whether the ALJ erred in relying on the vocational expert's testimony</u>

Next, Osmon argues that the ALJ erred by relying on vocational expert testimony that conflicted with job descriptions in the regulations. Pl.'s Mem. 5 – 7.

Sharon B. Lane, a vocational expert, testified that someone with Osmon's same age, education, and work history would be unable to perform her past work. Adm. Rec. 92. Lane further testified as to what jobs an individual with Osmon's same age, education, work history, and limitations, including "no use of the upper extremities above shoulder level," could perform. *Id.* Lane suggested three jobs: mailroom clerk, marking clerk, and office helper. *Id.*

5

The ALJ determined that Osmon had the following limitation on her residual functional capacity: "no use of the upper extremities above shoulder level." *Id.* at 41.  The ALJ found Lane's testimony consistent with the *Dictionary of Occupational Titles*. *Id.* at 51.

Osmon argues that the jobs Lane suggested conflict with the descriptions in the *Dictionary of Occupational Titles*.  Pl.'s Mem. 6.  For example, in the *Dictionary of Occupational Titles*, the position of mailroom clerk requires "frequent reaching," and defines "reaching" as "extending hand(s) and arm(s) in any direction."  *Id.* (emphasis in original).  Osmon argues that Lane's testimony suggesting three jobs which require reaching conflicts with the ALJ's assessment that she could not use her upper extremities above the shoulder level.  *Id.*  Osmon did not raise this conflict with the ALJ.  *See* Adm. Rec. 91 – 92.

Under the regulations, if the vocational expert's evidence "appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."  Soc. Sec. Reg. 00-4P.  However, when the claimant does not bring the conflict to the ALJ's attention, the regulations do not require the ALJ to resolve an unapparent conflict.  *Ledford v. Astrue*, 311 F.App'x 746, 757 (6th Cir. 2008).

In Lane's testimony, she referred to the *Dictionary of Occupational Tables* to support her assessment that Osmon could perform the work of a mailroom clerk, marking clerk, or office helper.  Adm. Rec. 92.  The conflict between the three jobs suggested by Lane, in which the descriptions require the individual to be able to reach in any direction, and Osmon's limitation, that she could not use her upper extremities above shoulder level, was not apparent from Lane's testimony.  *See* Adm. Rec. 92 – 93.  Therefore, the ALJ did not err in relying on Lane's testimony, even though it conflicted with the *Dictionary of Occupational Titles*.

The Court will deny Osmon's motion for summary judgment.

VI. <u>Judgment independent of the motion</u>

The Commissioner has not moved for summary judgment.

Under Rule 56, the Court may grant summary judgment to a nonmovant after giving notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

In its order, the Court will provide notice that it may grant judgment independent of the motion for the Commissioner. The Court will give Osmon thirty days to respond to this notice. If Osmon responds, the Court will entertain that response in deciding whether judgment for the Commissioner is appropriate. If Osmon does not respond within thirty days, the Court will grant summary judgment to the Commissioner and dismiss the case with prejudice.

VII. <u>Conclusion</u>

The Court will deny Osmon's motion for summary judgment. The Court will enter an order in accordance with this opinion.

cc: Counsel of record